**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CHRISTOPHER T. COOK** and **ALISON C. COOK**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **STATE FARM FIRE AND CASUALTY COMPANY**, <br><br> *Defendant*. | **Case No. CIV-25-01098-R** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR PROTECTIVE ORDER AND TO QUASH AND/OR STAY DEPOSITION, OR ALLOW FOR CONSOLIDATED DEPOSITION OF NICOLE MANDUCA**

COMES NOW the Plaintiffs, by and through their counsel of record, and hereby responds to State Farm's Motion for Protective Order, Motion to Quash and/or Stay, or Allow Consolidation of the noticed deposition of Nicole Manduca across several federal court cases. In response, Plaintiffs respond as follows:

**BACKGROUND**

In the summer of 2020, State Farm's Wind/Hail Fire Model Enhancement Team ("FME") performed a "kick off" in Dallas County, Texas. By 2021, the FME's Wind/Hail Initiative had been expanded to all states, including Oklahoma due to tremendous "success" in Texas. In *Barnett v. State Farm*, Case No. CJ-20-141 (Grady County, Oklahoma), State

Farm Claims Consultant Tom Moss testified to the existence of the WHMET, of which Moss was a member.[1]

Under the direction and leadership of Team Leader Nicole Manduca, and with the advice and direction of senior State Farm leadership (including Senior Claims Executive Wensley Herbert and other Senior Vice Presidents Tyrone Smith, Scott Welsh, Wendy Mazza, Kathy Rees, and Senior Consultant Moss), State Farm's FME identified reduction of full roof replacements as its target. State Farm measured improved "quality" by reducing the percentage of full roof replacements, reducing overall roof spending on full roof replacements, reducing the ratio of full roof replacements to partial roof replacements, and then tracking the increase in claims labeled, CWP (closed without payment), for claims adjudicated for payment of roof "repairs" below the deductible.

Nicole Manduca was deposed in April 2024. (State Farm has refused to produce such deposition and exhibits despite numerous requests for production in various cases.) She worked under several Vice President of Claims, who reported to Wensley Herbert, the Sr. VP of Claims at State Farm, who was actively involved in ensuring the success of the Wind/Hail Initiative. (Herbert and these executives have been noticed for depositions, and Judge Palumbo denied State Farm's Motion to Quash for executives in *Hursh v. State Farm*. That decision along with document production of numerous documents previously ordered

---

[1] *See* Plaintiffs' Motion to Compel, *Hosier v. State Farm*, Case No. CJ-2021-1741 (Feb. 23, 2024, Grady Cty, Okla.), at pp. 6-8, available on OSCN.

to be produced and which were returned and destroyed under confidential settlement agreements is on appeal via a writ of prohibition filed by State Farm).

Under the guise of "paying what we owe," State Farm identified the problem as unnecessary full roof replacements, without any evidence to show the roof replacements were not required and did so before the claims occurred. Indeed, State Farm compared its own performance on FRR ("baseline") to the industry best standard using the metric of % of Full Roof Replacement.  Comparing its internal higher percentage to the lower industry standard, State Farm found its golden opportunity and determined (before claims occurred) it could substantially reduce its indemnity payouts by lowering its percentage of approval for full roof replacements. This aggregate claim handling is the exact opposite of individualized case by case adjusting.

State Farm employed Accenture (formerly Andersen Consulting), a Fortune Global 500 international consulting firm with a market capitalization of over $150 billion, to develop ways to achieve this indemnity reduction. Accenture provided State Farm with alleged "industry standards" on full roof replacements on Wind/Hail insurance claims nationwide, purporting to show that State Farm was paying for full or total roof replacements at a much higher percentage than the nationwide average. (Once again, State Farm has refused to produce the Accenture documents and industry standards used).

Thus, unnecessary roof replacements and meeting some arbitrary and capricious industry standard became the main target of the WHMET in order to achieve its desired goal of lowering indemnity related to roofs. Indeed, Nicole Manduca, FME Team Leader, was eventually deposed in *Nida v. State Farm* April 2024. Briefing in that matter reinforces

3

the relevancy of her testimony here. During her deposition, <u>Ms. Manduca was questioned about a document relating to State Farm's Fire Accuracy Dashboard-a webpage through which it regularly monitored the number of full roof replacements its Team Managers authorized to be paid.</u>

On this email· chain, Tom Moss, a State Farm Claims Consultant on the FME program, <u>**mentioned his concern that the dashboard "may give the appearance we have a target number" of full roof replacements and may affect "how others outside of the company try to characterize the metric."**</u> (*Plaintiffs' Challenges to State Farm's Privilege Log and Request for In Camera Review*, *Nida v. State Farm*, CJ-2020-4453 (Okla. Cty. Okla Jun 21, 2024).

In essence, Tom Moss expressed concern to Manduca of the very heart of State Farm's Scheme, i.e., aggregate claim handling via a calculated effort to meet some unknown standard and to reduce Full Roof Replacements on Wind/Hail Claims before those claims occur, the epitome of bad faith and fraud.

The Honorable Judge Dishman in *Wiesman v. State Farm*, CIV-2025-50-JD, recently followed multiple decisions from Oklahoma state courts denying State Farm's desperate attempts to prevent any of its executives from answering questions about the FME and its direct impact on State Farm insureds like the Plaintiffs, Christopher and Alison Cook, who were victims of a denied full roof replacement, the very heart of State Farm's Scheme. Judge Dishman denied State Farm's Motion to Quash Nicle Manduca's deposition in *Wiesman v. State Farm*, CIV-2025-50-JD. Similarly, Judge Sheperd denied State Farm's

Motion to Quash Nicole Manduca's deposition just a week later in *West v. State Farm*, CJ-2025-135.

**RELIEF REQUESTED**

1.      In its Motion, State Farm now takes a position in direct contrast to numerous other cases in which it has denied the Wind/Hail Fire Model Enhancement Team (the "WHMET") and its impact on thousands of Oklahomans insureds. For years, State Farm has argued these cases are distinct, unique, and deal with different issues, different adjusters, different claims, different storms, roofs, and circumstances. But now, when facing the reality of multiple deposition notices, State Farm now claims that such depositions should be consolidated to help any burden to its executive Team Leader of the FME—Nicole Manduca. Assuredly, State Farm will take similar positions with its other executives directly involved in the FME implementation and success.

2.      Numerous courts have held the party opposing a deposition carries a "heavy burden" to justify its prohibition, and such prohibition shall only be granted upon a showing of "extraordinary circumstances" that warrant such relief. *Kulp Minerals, LLC v. Apache Corp.*, 2025 WL 872531, at *3 (D.N.M. Mar. 20, 2025) ("A party seeking to prevent a deposition ... carries a heavy burden to show why discovery should be denied—and absent extraordinary circumstances—it is very unusual for a court to prohibit the taking of a deposition."); *Halley v. State of Oklahoma*, 2016 WL 4995393, at *1 (E.D. Okla. Sept. 19, 2016) ("A party seeking to quash a deposition has a 'heavy burden of demonstrating good cause' that the deposition should not be taken. ... The party seeking to prevent a deposition must show 'extraordinary circumstances that present a particular and compelling need for

5

such relief.' ") (citation omitted).

3.      Each individual Plaintiff who was harmed by State Farm's Scheme should have the opportunity to fully depose and question State Farm's executive team who implemented the Wind/Hail Focus Initiative. Indeed, State Farm has argued countless times in court and in pleadings that the documents at issue and the issues related to the Wind/Hail Scheme as alleged are to be treated on a case-by-case, individualized basis. But now, State Farm wants its executives to be protected across multiple cases. Will State Farm agree to produce all documents that are received and ordered to be produced to be utilized in all cases, just as they are suggesting should take place with respect to Nicole Manduca's deposition? Considering State Farm has rejected that position over and over again, the answer is likely no.

4.      Nicole Manduca was deposed a few weeks ago in another State Farm case in which Whitten Burrage was not counsel of record. The first question raised by State Farm's Motion is why the Whitten Burrage cases? State Farm does not appear to be filing any such motions in any other State Farm cases.

5.      Moreover, as part of its Wind/Hail Playbook, State Farm implemented training on the "Art of the Conversation", knowing it would have a major increase in upset policyholders with denied roof claims. In other words, State Farm specifically trained its adjusters for responding to the expected uptick in complaints by loyal insureds. So, it is hard to see how State Farm is being prejudiced as far as increased litigation over Wind/Hail claims and should not avoid responsibility for its Scheme because it knew this would be the result.

6.      Counsel for State Farm in this case never had an in-person meeting about consolidating Nicole Manduca's deposition in numerous federal court cases after the *Wiesman* Order was issued. That never occurred. Undersigned counsel spoke with Mr. Lance Leffel, counsel for State Farm in *Wiesman*, but never in person with counsel in this case. Undersigned counsel reached out to opposing counsel to caution about filing additional motions to quash in consideration of the *Wiesman* Order as well as numerous other state court orders ALL denying State Farm's Motion to Quash Nicole Manduca. Actual compliance with Rule 37.1 may have prevented this motion and response as outlined herein if the parties could have continued to discuss potentially viable options.

7.      Indeed, undersigned counsel has exchanged emails with opposing counsel about proposals for a workable compromise in certain federal court cases. These proposals were made despite Plaintiffs' position that no such compromise is required considering State Farm's repeated contradictory positions on this issue. However, such compromise at a minimum would include certain actions to achieve judicial economy as State Farm claims it is seeking. These include the following:

- All Manduca deposition transcripts will be available for use in any Whitten Burrage State Farm case;
- State Farm will produce a copy of Manduca's deposition in April 2024 in *Nida v. State Farm* mentioned herein with exhibits, as recently ordered to be produced by Judge Virgin in Cleveland County, and which is the subject of discovery requests in multiple cases. Such deposition and exhibits will be available for the Manduca depositions being contemplated herein.
- State Farm will produce the <u>exhibits</u> to Jason Taylor's corp. rep. deposition in *Nida v. State Farm*. The entire transcript is public record and on oscn.net.
- Plaintiff will be able to schedule additional depositions following production of any documents related to the FME Wind Hail Initiative as ordered by any Court (and currently the subject of the writ after being ordered to be produced by Judge

7

Palumbo in *Hursh*).  The parties will work together to identify those depositions in good faith.

- No agreement will impact any state court cases or rulings or be used in any effort of consolidation in any state court cases.
- A 2-day deposition of Manduca for the current 10 federal court cases to allow time in our discretion to ask questions across multiple cases.
- The parties agree to the same process for other State Farm executives including Tom Moss, Wensley Herbert, Kathy Ress, and Scott Welsh.  This would address concerns raised in the motion for protective order and letter as well with respect to the executives whom Manduca reported to or worked with on the FME.

## CONCLUSION AND REQUEST FOR RELIEF

**WHEREFORE**, for the reasons stated herein, Plaintiffs respectfully request the Court do the following:

1) Deny State Farm's Motion,

2) Order Nicole Manduca's deposition with stipulations in paragraph 7; or

3) Allow the parties additional time (5 business days) to work toward some comprise with respect to Nicole Manduca's deposition.

Respectfully submitted,

*/s John Sanders*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office:        405.516.7800
Facsimile:    405.516.7859

8

9

rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, the above and foregoing was served upon all counsel of record via the court's CM/ECF system.

*/s John Sanders*